IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

NANCY S. DUBE
      Plaintiff,

v.                              Case No. 3:11cv474/LC/CJK

MICHAEL J. ASTRUE,
Commissioner of Social Security,
      Defendant.

---

## REPORT AND RECOMMENDATION

      This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b), and NORTHERN DISTRICT OF FLORIDA LOCAL RULES 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. §§ 401-1400v.  The case is now before the court pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying claimant's application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401-34, and for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-83.

      Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence.  The decision of the Commissioner, therefore, should be affirmed, and the application for benefits denied.

## PROCEDURAL HISTORY

Nancy S. Dube[1] (who will be referred to by name, as plaintiff, or as claimant) filed an application for supplemental security income on November 30, 2007.[2]  T. 175-83.[3]  Ms. Dube also filed an application for disability insurance benefits on December 19, 2007.  T. 170-74.  In both instances, claimant alleged disability beginning August 24, 2007.[4]  T. 172, 175.  Both applications were denied initially and upon reconsideration.  T. 117, 121, 127, 130.  Claimant filed a written request for a hearing,  T. 133-34,  which was held before an administrative law judge ("ALJ") on April 30, 2010.  T. 52-79.  Plaintiff appeared and testified at the hearing; Robert Strader, an impartial vocational expert, also testified at the hearing.  T. 52-79.  The ALJ denied claimant's applications, finding she had not been under a disability within the meaning of the Act from August 24, 2007, through the date of the decision, July 22, 2010.  T. 22-46.  The Appeals Council of the Social Security Administration denied plaintiff's request for review, rendering the ALJ's decision the

---

[1] During the course of treatment described here, Ms. Dube married and took the name Mitchem, explaining why a different surname appears in a number of medical records.

[2] The application summary for SSI indicates claimant applied on December 19, 2007.  T. 175. The disability determination transmittal forms designate the filing date as November 30, 2007,  T. 110-11, as does the ALJ's decision.  T. 25.  Plaintiff's memorandum lists the SSI filing date as November 20, 2007.  (Doc. 7, p. 2).

[3] The administrative record, as filed by the Commissioner, consists of 14 volumes (doc. 5-3 through 5-16), and has 745 consecutively numbered pages.  References to the record will be by "T." for transcript, followed by the page number.

[4] Claimant previously filed an application for disability insurance benefits on July 1, 2004, with an alleged disability onset date of April 30, 2004.  T. 25.  An ALJ denied the application on August 23, 2007, and the Appeals Council denied review.  T. 25.  Accordingly, the ALJ's August 23, 2007, decision is considered determinative on issues prior to that date.  T. 25.

Commissioner's final decision.  T. 1.  Claimant now seeks judicial review of the Commissioner's decision, contending "the ALJ minimized [her] subjective pain complaints and rejected [her treating physician's] opinions on conclusory grounds." (Doc. 7, p. 6).[5]

## FINDINGS OF THE ALJ

In the written decision the ALJ made a number of findings relative to the issues raised in this appeal:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.  The claimant has not engaged in substantial gainful activity since August 24, 2007, the alleged disability onset date.

3.  The claimant has the following severe impairments: lumbar degenerative disc disease, bilateral hallux valgus deformities, hypertension, fibromyalgia, gastroesophageal reflux disease (GERD), mild cervical spondylosis, cervical degenerative disc disease, cervical facet joint dysfunction, bilateral median nerve compression across wrist segments (without axonal loss), and bilateral hand osteoarthritis.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

---

[5] Although the record describes a number of medical issues, the plaintiff's memorandum concentrates only on problems with her spine.  (Doc. 7, pp. 3-8).  Accordingly, this review of the ALJ's findings will focus on those parts of the record related to claimant's spinal problems.

5.  The claimant has the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).  She is unable to climb ladders, ropes, or scaffolds, cannot tolerate exposure to dangerous heights or machinery, can only occasionally stoop, kneel, crouch, and crawl, and can only occasionally perform fingering.

6.  The claimant is capable of performing her past relevant work as a retail manager.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.  The claimant has not been under a disability, as defined in the Social Security Act, from August 24, 2007, through July 22, 2010.

T. 25-46.

<u>STANDARD OF REVIEW</u>

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied by the ALJ.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  With reference to other standards of review, the Eleventh Circuit has said, "'Substantial evidence is more than a scintilla . . . .'"  *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at 1439).

Although the ALJ's decision need not be supported by a preponderance of the evidence, "it cannot stand with a 'mere scintilla' of support." *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986) (*quoting Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985)).  The reviewing court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Nevertheless, a reviewing court may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). In sum, review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record."[6] *Flynn*, 768 F.2d. at 1273; *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).  The recitation of medical and historical facts of this case, as set out below, is based upon my independent review.

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

---

[6] The Eleventh Circuit speaks not only of independent review of the administrative record, but reminds us it conducts *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision.  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2.  If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.  If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.  If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.  Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. *See Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).  The Eleventh Circuit has explained the operation of step five:

> In practice, the burden temporarily shifts at step five to the Commissioner.  The Commissioner must produce evidence that there is

other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that [she] is unable to perform the jobs that the Commissioner lists.  The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.  *See Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) ('The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act')).

*Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

Step five (or step four in cases where the ALJ decides a claimant can perform her past work) is generally where the rubber meets the road.  At that point, the ALJ formulates the all-important RFC.  Even where one or more severe impairments are established, the claimant must show that she cannot perform work within that RFC.  The ALJ establishes the RFC, utilizing the impairments identified at step two, by interpretation of (1) the medical evidence, and (2) the claimant's subjective complaints (generally complaints of pain).  The RFC is then used by the ALJ to make the ultimate vocational determination required by step five.[7]  "[R]esidual functional capacity is the most [claimant] can still do despite [claimant's] limitations."[8]  20

---

[7] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.)  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."  20 C.F.R. § 404.1520(a)(4).

[8] In addition to this rather terse definition of residual functional capacity, the Regulations describe how the Commissioner makes the assessment:

(3) Evidence we use to assess your residual functional capacity.  We will assess your residual functional capacity based on all of the relevant medical and other evidence.  In general, you are responsible for providing the evidence we will use to make a

C.F.R. § 404.1545(1).  Often both the medical evidence and the accuracy of a claimant's subjective complaints are subject to a degree of conflict, and that conflict leads, as in this case, to the points raised on judicial review by many disappointed claimants.

## FACT BACKGROUND AND MEDICAL HISTORY[9]

Nancy S. Dube was born on October 27, 1954, and was fifty-two years old on the alleged disability onset date.  T. 172.  Claimant has a GED,  T. 55,  and speaks English.  T. 216.  Ms. Dube's past relevant work includes managerial positions at a Dollar General, a hospital retail store, and an apartment complex.  T. 58-60.  She has also held positions as a cashier, stocker, and sales representative.  T. 227.

Ms. Dube began seeing Ronald Maddux, M.D., in 2005.  T. 364.  Claimant began complaining to Dr. Maddux of neck pain in July 2006, T. 334, and back pain in April 2007.  T. 321. Claimant denied suffering any injury that brought on the back

---

finding about your residual functional capacity.  (See § 404.1512(c).)  However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.  (See §§ 404.1512(d) through (f).)  We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations.  (See § 404.1513.)  We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.  (See paragraph (e) of this section and § 404.1529.)[.]

20 C.F.R. § 404.1545(a)(3).

[9] Although intended to be thorough, and to provide an overview of claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as called for in the Analysis section.

pain.  T. 316.  Claimant continued to complain of spinal pain in her visits with Dr. Maddux through 2008.  T. 316, 319, 436.  Dr. Maddux prescribed Flexeril, a muscle relaxer, and Darvocet, a pain medication.  T. 315, 325.

At Dr. Maddux's request, claimant's spine was x-rayed on multiple occasions. T. 352, 364.  A November 2005 x-ray revealed slight degenerative changes at the L5-S1 disc space evidenced by disc space narrowing and slight sclerosis of the L5-S1 facet joint complexes.  T. 364.  A November 2007 x-ray also showed mild degenerative changes.  T. 352, 365.

On February 25, 2008, Matthew Warner, M.D., conducted a consultative examination.  T. 405-11.  Claimant reported pain in her neck and back, in addition to other areas.  T. 405.  Dr. Warner's physical examination revealed claimant could tandem walk; walk on her heels and toes; bend; squat and rise; dress and undress; get up from a chair; and get on and off an examining table.  T. 407.  Dr. Warner also noted claimant's gait was normal.  T. 407.  Dr. Warner's examination of claimant's spine revealed no paravertebral muscle spasms.  T. 407.  Seated and supine straight leg raising tests were negative at ninety degrees with pain reported to back.  T. 407. Claimant was able to bend forward to her ankles, albeit with pain in her back.  T. 407.

Ms. Dube visited the Stanton Road Clinic from April to July 2008 for complaints of generalized pain.  T. 443-45, 447, 462-63.  On a July 30, 2008, visit to the Clinic, claimant complained of head, neck, and shoulder pain.  T. 462.  Dr. Elkin noted that claimant "reports she's mainly here to get disability."  T. 462.

Claimant continued to make complaints about her back and neck pain to Dr. Maddux in 2008.  T. 431, 436, 438.  Dr. Maddux requested that claimant undergo additional x-rays and an MRI.  T. 466-67.  On September 4, 2008, x-rays revealed

relative straightening of the cervical spine and osteopenic bones.  T. 467.  Further, the x-rays showed a slight loss of disc space height at C3-4 and a more prominent loss of disc space height from C5 to C7, as well as mild osteophytosis at C3-4 and mild to moderate osteophytosis from C5 to C7.  T. 467.  Slight neural foramina narrowing on the left at C4-5 and at C6-7 was also apparent.  T. 467.  On September 12, 2008, an MRI of the cervical spine revealed mild cervical spondylosis evidenced by posterior disc bulges at C5-6 and C6-7.  T. 466.  The reporting physician did not identify an eccentricity to explain the patient's symptoms of neck and shoulder pain, and did not identify significant encroachment upon the canal or intervertebral neural foramina.  T. 466.  Dr. Maddux continued to prescribe Darvocet and Flexeril to treat claimant's spinal pain,  T. 437, but also prescribed Lortab to treat claimant's shoulder pain.  T. 464.

Richard  W.  Lucey,  M.D.,  conducted  a  consultative  examination  and summarized his findings in a letter dated September 18, 2008.  T. 469-74.  Dr. Lucey's examination of claimant's neck revealed a normal range of movement but some subjective discomfort.  T. 470.  Dr. Lucey noted claimant's posture was erect and her gait was normal.  T. 470.  Dr. Lucey further noted that claimant could perform heel,  toe,  and  tandem  walking  without  evidence  of  weakness  or  ataxia,  but  had discomfort walking on her heels.  T. 470.  Dr. Lucey observed diminished range of motion in the thoracolumbar spine and subjective discomfort upon moving from a sitting to supine position.  T. 470.  Based on a review of the  claimant's MRI, Dr. Lucey concluded she suffered from mild cervical spondylosis.  T. 469-71.

Claimant  started  treatment  with  Lisa  King,  M.D.,  in  2009.  T. 605.  After complaining of neck pain, T. 595, 597-98, 605, Dr. King treated claimant with Mobic,

Robaxin, and Darvocet.  T. 595, 597.  Dr. King also ordered an MRI and x-rays of claimant's spine in November 2009.  T. 612-14.  The MRI revealed degenerative disc disease throughout the mid-cervical spine, most pronounced at the C5-6 and C6-7 level, and posterior disc bulges of approximately three millimeters at these levels.  T. 613.  X-rays of the cervical spine revealed slight straightening of the normal cervical spine lordosis.  T. 612.  The x-rays also showed disc space narrowing at the C5-6 and C6-7 levels with slight spurring projecting posteriorly from the end plates.  T. 612.  Minimal encroachment upon the intervertebral neural foramina was visible at the C5-6 level bilaterally.  T. 612.  An x-ray of the lumbar spine revealed moderate degenerative changes at the L5-S1 disc space.  T. 614.

Cesar Llanera, Jr., M.D., began treating Ms. Dube for spinal pain in February 2010.  T. 633-35.  Claimant complained to Dr. Llanera of neck pain radiating to both shoulders, with accompanying intermittent numbness and tingling in the fingers of both hands, and chronic low back pain, with intermittent radiation to both lower extremities accompanied by numbness and tingling.  T. 633.  Claimant reported aggravated pain with increased physical activity and prolonged standing, sitting, bending, walking, lifting, and stress.  T. 633.  Dr. Llanera's examination of the cervical spine showed a slight limitation of range of motion with subjective pain and discomfort.  T. 634.  Dr. Llanera also noted mild tightness in the paraspinal muscles and tenderness in the C5-6 cervical facet joint on both sides.  T. 634.  Examination of the lumbar spine also revealed a slight limitation on the range of movement with subjective pain and discomfort, as well as some tenderness.  T. 634-35.

Dr. Llanera assessed claimant with cervicalgia, degenerative disc disease and spondylosis (cervical and lumbar), chronic low back pain, and lumbar facet

arthropathy.  T. 635.  To treat Ms. Dube's back and neck pain, Dr. Llanera performed several cervical and lumbar epidural steroid injections, and cervical and facet joint nerve blocks.   T. 622-23, 630-31, 626-27, 708-09, 714-15.   Dr. Llanera also performed a left sacro-iliac joint arthrogram and injection.  T. 714-15.  This treatment succeeded in alleviating some of claimant's neck pain, but pain in her lower back persisted.  T. 628, 683.

On May 7, 2010, Dr. Llanera completed a questionnaire on claimant's condition.  T. 637-39.  Dr. Llanera opined that Ms. Dube's medical condition could be expected to cause pain that would be seriously distracting from work activities; a job requiring sitting or standing for prolonged periods or maintaining a work posture for eight hours without the opportunity to recline would increase her pain level; and this increase in pain level would cause serious distraction from work activities.  T. 637-38.  Dr. Llanera also noted that claimant's underlying medical condition could be expected to cause her complaints and that these complaints were not exaggerated. T. 638-39.

After the ALJ issued his decision, Dr. Llanera completed an identical questionnaire.  T. 739-41.  On this questionnaire, completed on April 11, 2011, Dr. Llanera offered additional explanation of his opinions.  T. 741.  Dr. Llanera noted claimant had degenerative disc disease and spondylosis (cervical and lumbar) that caused her stiffness, muscle spasms, and pain.  T. 741.  He noted these conditions were aggravated by increased physical activity and prolonged standing, sitting, lifting, and bending.  T. 741.  He reported claimant only got short-term relief from her symptoms despite treatment.  T. 741.  Based on observations of claimant during office encounters, Dr. Llanera opined that claimant was not malingering.  T. 741.

Dr. Llanera continued to treat claimant's back with epidural injections following the ALJ's decision.  T. 673-80, 708-09, 714-19, 742-43.  As late as April 11, 2011, Dr. Llanera reported only a slight limitation in claimant's lumbar spine range of motion and full range of motion in the cervical spine.  T. 742.

<u>HEARING BEFORE THE ALJ</u>

The administrative hearing commenced with the testimony of Ms. Dube.  T. 54.  She testified she was fifty-five years old, had a ninth-grade education and GED, and lived with her husband.  T. 55-56.  She stated she was unable to work due to pain associated with any length of standing, walking, bending, stooping, or stretching over her head.  T. 56.  She reported numbness and tingling in her hands, swelling in her knees, and pain in her feet.  T. 56.  She added that Dr. Llanera told her she had three bulging discs or spurs in her neck and a pinched nerve.  T. 56.

Claimant testified about her work history.  T. 58-60.  She was a manager at Dollar General, where her responsibilities included hiring and firing employees, completing bank deposits, loading and unloading trailers, and stocking merchandise.  T. 58.  She managed a hospital retail outlet store, which sold home health supplies.  T. 58.  She was an employee of Fantastic Sam's, where she shampooed customers' hair and completed bank deposits and other paperwork.  T. 59.  She managed an apartment complex, where she conducted background and credit checks, maintained the finances, and performed maintenance work.  T. 59-60. Claimant claimed the physical activity associated with those jobs would cause pain that would make it difficult to perform them.  T. 59.

Next, claimant described her daily routine.  She wakes up around 5:30 to 6:00 each morning, makes a pot of coffee, fixes her husband breakfast, and then does the

dishes and makes the bed.  T. 60-61.  She occupies the rest of her day by watching TV or visiting with her sister.  T. 61.

Claimant stated her symptoms vary in intensity from day to day.  T. 61, 69-71. Claimant's worst pain is in her neck and left shoulder.  T. 72.  On a bad day, it takes claimant much longer to complete chores and she spends about four to five hours relaxing with her feet up.  T. 70-71.  On good days, which she has two to three times a week, claimant can perform additional chores and be active for about seven to eight hours total.  T. 69-71.  On a scale of one to ten, Ms. Dube rated her pain as a nine on bad days and from four to six on good days.  T. 74.

The hearing concluded with the testimony of the vocational expert, Robert Strader, who classified Ms. Dube's previous jobs as light from an exertional standpoint with a skill level of five to seven. T. 75.  The ALJ asked Mr. Strader if an individual performing light work would be expected to stand or walk up to six hours in an eight-hour day, and Mr. Strader confirmed that they would.  T. 75.  Under questioning from Ms. Dube's attorney, Mr. Strader noted that absenteeism over two days a month would make an individual unemployable.  T. 77.  Mr. Strader agreed that if Ms. Dube's testimony was found to be credible, she would be unemployable. T. 78.

## ANALYSIS

Claimant raises two issues on this appeal, asserting first that the ALJ did not accord proper weight to the opinion of her treating physician, Dr. Llanera.  (Doc. 7, pp. 4-6).  Second, claimant contends the ALJ "did not properly evaluate plaintiff's

pain and other subjective symptoms."[10]  (Doc. 7, pp. 6-8).

Treating physician testimony must be given substantial weight unless good cause is shown to the contrary.  *Lewis v. Callahan*, 125 F.3d 1435, 1440 (11th Cir. 1997).  "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  *Lewis*, 125 F.3d at 1440.

In claimant's case, the ALJ decided good cause existed not to assign any weight to Dr. Llanera's opinion as expressed in the May 7, 2010, questionnaire.  T. 40, 637-39.  The ALJ supported this decision by noting Dr. Llanera's opinion was "vague and conclusory" and did not specify which of claimant's conditions would cause her work-related limitations.  T. 40.  Indeed, Dr. Llanera's May 7, 2010, opinion was offered on a preprinted check-off form that did not cite any evidence in the record supporting the work-related limitations identified.  T. 637-39.  Courts have found such preprinted forms do not provide persuasive evidence of the validity of the opinions expressed therein.  *See Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("Check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."  (*citing Spencer ex rel. Spencer v.*

---

[10] Although the heading of her argument contends the ALJ misconstrued "other subjective symptoms," the actual argument in the memorandum is limited to a discussion of pain as the determinative indicia of disability.

*Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985);  *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993))).  Owing to the lack of objective evidence cited therein, the opinion of Dr. Llanera is conclusory and probative of little.

The ALJ offered several other reasons for ascribing little weight to the opinion of Dr. Llanera.  The ALJ noted that Dr. Llanera's actual treatment notes did not suggest claimant's condition was as severe as indicated on the questionnaire.  T. 40. On March 29, 2010, a little more than a month before the questionnaire was completed, Dr. Llanera recorded that treatment provided significant relief to claimant, reducing her neck pain to a two out of ten, and leaving her "practically pain-free for about three to four days after the injection procedure."  T. 683.  Claimant also reported that "she was quite happy with the result of the injection procedure." T. 683. The ALJ found these reports of successful treatment and significant pain relief were inconsistent with Dr. Llanera's opinion that claimant's pain would be distracting from work activities.  T. 40.

In further support of his findings, the ALJ  noted that claimant's activities of daily living were inconsistent with Dr. Llanera's opinion as to the limitations claimant's pain would cause.  T. 40.  The ALJ found claimant had only mild limitations in her activities of daily living.  T. 35.  Claimant reported that she was able to care for her own personal needs without assistance, prepare her own meals, and do her laundry, though she did indicate these activities took longer to complete than they used to.  T. 237-38, 275.  Claimant also reported that she could drive, go grocery shopping, manage her money, and visit her sister once a week.  T. 239-40. Claimant's sister, Rita Maggard, confirmed claimant visited her, stating claimant drove nearly seven miles to her house several times a week.  T. 245.  Ms. Dube also

told Dr. Llanera that her hobbies consisted of crafts and quilting.  T. 634.  The performance of these various activities of daily living provides evidence that undermines Dr. Llanera's opinion concerning the degree of claimant's pain.  *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (holding the ALJ can consider daily activities in formulating the residual functional capacity); *see also* 20 C.F.R. § 1545(a)(3) ("Evidence we use to assess your residual functional capacity. . . . We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.").

The ALJ also noted the objective evidence in the medical record did not support the conclusion that claimant's condition was severe enough to cause the type of limitations asserted by Dr. Llanera.  T. 40.  The most recent x-rays of claimant's cervical spine, taken on November 11, 2009, showed slight straightening of the normal cervical spine lordosis and disc space narrowing at C5-6 and C6-7.  T. 612.  These x-rays also revealed only slight spurring at C5-6 and C6-7 levels and only minimal encroachment on the intervertebral neural foramina at the C5-6 level bilaterally.  T. 612.  An MRI taken in November 2009 revealed degenerative disc disease throughout the mid-cervical spine that was most pronounced at the C5-6 and C6-7 levels.  T. 613.  This MRI also showed only minimal posterior disc bulges and the vertebral body heights and marrow signal remained normal.  T. 613.  The physician who interpreted claimant's September 2008 MRI could "not identify [an] eccentricity to explain the patient's symptoms."  T. 466.  November 2009 x-rays of the lumbar spine revealed moderate degenerative changes at the L5-S1 disc space.  T. 614. Although this medical evidence confirms the existence of some spinal

problems, as the ALJ recognized, the evidence does not speak to the severity of the pain resulting from these problems. As Drs. Warner and Lucey reported, claimant had only minimal limitations in her range of motion and maintained a normal gait.  T. 405-11, 469-74.  Dr. Llanera's May 24, 2010 treatment notes only report mild diffuse tenderness of the lower cervical spine; mild diffuse tenderness of the lower lumbar spine; and slight limitation of range of motion in the lumbar spine.  T. 681. Accordingly, the assignment of severity to claimant's pain is based almost entirely on claimant's subjective reports.  As discussed below, the ALJ found the claimant to be only partially credible.  Thus, Dr. Llanera's opinion reflect claimant's exaggerated complaints of pain.

After the ALJ rendered his decision, claimant submitted a more detailed report from Dr. Llanera.  T. 739-41.  This document cited claimant's degenerative disc disease and cervical/lumbar spondylosis as the cause of claimant's stiffness, muscle spasms, and pain and noted these symptoms would be aggravated by increased physical activity or prolonged standing, sitting, lifting, or bending.  T. 741.  Based on observations of claimant during office visits, Dr. Llanera opined that claimant was not malingering.  T. 741.  Although this more detailed opinion is not so conclusory as the original, it does not overcome the other reasons the ALJ gave for discrediting the original opinion.

In sum, the decision not to attach any weight to Dr. Llanera's opinion was permissible because the opinion was inconsistent with the doctor's treatment notes, the other objective medical evidence, and claimant's activities of daily living.  These inconsistencies provided substantial evidence for the ALJ's finding.

For her second point, plaintiff asserts the ALJ erred by finding claimant's

subjective complaints of pain were not entirely credible.  (Doc. 7, pp. 6-8).  The Commissioner will not find disability based solely on statements about pain or other symptoms; "there must be medical signs and laboratory findings which show that you have medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion you are disabled ."  20 C.F.R. § 404.1529(a); *accord* 20 C.F.R. § 416.929(a).  The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[11] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (*citing Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Adamo v. Comm'r of Soc. Sec.,* 365 F. App'x 209, 214 (11th Cir. 2010) (*quoting Wilson*, 284 F.3d at 1225); *Elam v. R.R. Ret. Bd*., 921 F.2d 1210, 1216 (11th Cir. 1991).

In the alternative, an ALJ may apply the pain standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard."  *Wilson,* 284 F.3d at 1226.  Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate

---

[11]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (*citing Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1259 (M.D. Fla. 2005). Nonetheless, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *See Marbury*, 957 F.2d at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

If the Commissioner refuses to credit subjective testimony of pain, he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "The credibility determination does not need to cite particular phrases or formulations[,] but it cannot merely be a broad rejection which is not enough to enable [the reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Id*. (citations and internal quotations omitted). And, of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir.

2002); *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F. Supp. 2d at 1259.

Underlying the *Hand* standard, as suggested above, is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[12] Individuals with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand v. Heckler,* 761 F.2d 1545, 1548-49 (11th Cir. 1985). It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for

---

[12] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

the ALJ's credibility determination.

Here, the ALJ found claimant's musculoskelatal impairment could be expected to cause some pain and functional limitations.   T. 41.   Accordingly, the ALJ formulated an RFC that restricted claimant to light work and limited her exposure to certain work conditions.  T. 39.  The ALJ found, however, that claimant's subjective complaints were not credible to the extent she experienced disabling symptoms.  T. 41.

Although the claimant's MRIs and x-rays showed spinal abnormalities, such were not, as the ALJ noted, of the severity to suggest disabling pain.  T. 42.  The ALJ also noted that examinations of the claimant by Drs. Lucey and Warner revealed only minimal physical limitations.   T.   41.   Dr. Warner's examination revealed that claimant had a normal gait, normal range of motion, and no paravertebral muscle spasms.  T. 407.  Dr. Lucey's examination showed that claimant had a normal range of motion in her neck.  T. 470.  Although he noted somewhat diminished range of motion in plaintiff's thoracolumbar spine, Dr. Lucey reported that her gait was normal and that she could perform heel, toe, and tandem walking without evidence of weakness or ataxia.  T. 470.  Even Dr. Llanera reported only a "slight" limitation on range of motion in claimant's cervical and lumbar spine.   T.  634-35.   These examinations document relatively little loss of functional ability and indicate that claimant's spinal condition has not reached  a disabling level.

The ALJ also noted that Ms. Dube's allegations of disabling pain were undermined by her continued performance of activities of daily living.  As noted above, claimant continued to live an independent lifestyle and was capable of

shopping, driving, and socializing.  T. 239-40, 245.  The continued performance of a diverse set of activities of daily living undercuts Ms. Dube's claim that she is disabled and lends further support to the ALJ's finding that her allegations were not completely credible.  *See Conner v. Astrue*, 415 F. App'x 992, 995 (11th Cir. 2011) ("A claimant's daily activities may be considered in evaluating and discrediting a claimant's subjective complaints." (*citing Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984))); 20 C.F.R. § 404.1529(c)(3)(i).

Perhaps most damaging to claimant's credibility, the ALJ noted several instances in which Ms. Dube's doctors documented an overt request to be classified as disabled.  On March 8, 2008, psychiatrist Douglas Fraser, M.D., reported Ms. Dube told him to "'put down on paper that I am crazy' to assist her in obtaining Social Security."  T. 423.  This request came during the same appointment where claimant stated "she [was] doing well" and "denie[d] depression," T. 423, indicating she was trying to overstate the severity of her condition to the government.  On July 30, 2008, claimant told the physician at Stanton Road Clinic that "she's mainly here to get disability."  T. 462.  On a third occasion, psychiatrist John Sarazin, M.D., noted that claimant was "fixed on obtaining social security disability."  T. 578.  Claimant's demonstrated desire to obtain disability benefits suggests a proclivity to exaggerate the severity of her condition and thus supports the ALJ's finding that claimant lacked credibility.  "An ALJ may discount a claimant's subjective complaints for, among other reasons, that she appeared to be motivated to qualify for disability benefits." *Austin v. Astrue*, No. 5:07cv52/MCR/EMT, 2008 WL 2385520 (N.D. Fla. June 9, 2008) (*citing Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004); *Gaddis*

*v. Chater*, 76 F.3d 893, 895-96 (8th Cir. 1996); *Frey v. Bowen*, 816 F.2d 508, 516 (10th Cir. 1987)).

In sum, the ALJ's decision to find plaintiff's subjective complaints only partially credible was permissible, because the evidence suggests claimant exaggerated the severity of her medically determinable impairments.  Furthermore, plaintiff's lack of credibility hindered Dr. Llanera's ability to make an accurate evaluation of her work limitations, rendering his opinion as to plaintiff's condition of little evidentiary value.  The objective medical evidence of record and claimant's activities of daily living were inconsistent with both Dr. Llanera's opinion and Ms. Dube's subjective allegations.   Therefore, the ALJ's findings are supported by substantial evidence.

Where, as here, the ALJ has conducted a thorough examination of the record and properly considered claimant's medical condition as a whole to reach a determination supported by substantial evidence, this court may not reverse the Commissioner's decision.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  It is therefore respectfully RECOMMENDED:

The application for a period of disability and disability insurance benefits be DENIED and the Commissioner's decision be AFFIRMED.

At Pensacola, Florida, this 14th day of August, 2012.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).